IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JACOB BANSCHBACH,<br><br>Plaintiff,<br><br>vs.<br><br>M.S.P. CORRECTIONAL OFFICER CARL BECKWITH,<br><br>Defendant. | CV 15-00106-H-DLC-JTJ<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

Plaintiff Jacob Banschbach, an inmate proceeding in forma pauperis and without counsel, filed a Complaint pursuant to 42 U.S.C. § 1983, alleging Officer Beckwith sexually assaulted him during pat-down searches. (Doc. 2.) Defendant Beckwith filed a motion for summary judgment, arguing Mr. Banschbach failed to exhaust his administrative remedies with regard to the claims raised in his Complaint. (Doc. 8.)

Having considered the parties' arguments and submissions, the undersigned finds that Defendant Beckwith has not met his burden of demonstrating that administrative remedies were available and that Mr. Banschbach failed to properly utilize those remedies. Defendant's Motion for Summary Judgment (Doc. 70)

1

should be denied.[1]

## I. SUMMARY JUDGMENT STANDARD

The Ninth Circuit in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc), held that the proper procedural device for determining whether administrative remedies have been exhausted is a motion for summary judgment. *Id.* at 1168. Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The party moving for summary judgment has the initial burden of showing there is no genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If the moving party makes a prima facie showing that summary judgment is appropriate, the burden shifts to the opposing party to show the existence of a genuine issue of material fact. *Id*. On summary judgment, all inferences should be drawn in the light most favorable to the party opposing summary judgment. *Id*. at 159.

A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable

---

[1] As the issue was not raised in the Motion for Summary Judgment, the Court makes no determination about whether Mr. Banschbach's exhausted claims arose within the applicable statute of limitations.

jury could return a verdict for the nonmoving party." *Id.*

By notice provided on February 19, 2016 (Doc. 12), Mr. Banschbach was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

## II. ALLEGATIONS

Mr. Banschbach raises an Eighth Amendment cruel and unusual punishment claim and Fourteenth Amendment equal protection claim, alleging Defendant Beckwith "would grab my penis and testicles, he would move his hand up and down and up and down my penis during pat searches and if I refused to let him he would throw me in the hole and harass and threaten me. He would wink at me and make sexual comments to me when I was in my cell in the hole as well. This went on for 3+ years." (Complaint, Doc. 2 at 6.)

## II. FACTS

Jacob Banschbach is currently an inmate at the Montana State Prison (MSP). (Defendant's Statement of Undisputed Facts, Doc. 10 at ¶ 1.) MSP has an "Inmate Grievance Program" that allows inmates to appeal staff conduct. (SUF, Doc. 10 at ¶ 2, referencing Inmate Grievance Program § III(B)(1).) An Initial Classification Summary is generated for each inmate when he arrives at MSP, denoting the date

3

the inmate was oriented with the Prison Rape Elimination Act ("PREA"). (SUF, Doc. 10 at ¶ 3, citing Reich Aff. ¶ 5.) As part of PREA orientation, the inmate is instructed on the Inmate Grievance Program, including the process and procedures. (SUF, Doc. 10 at ¶ 4.) Mr. Banschbach completed PREA orientation in March 2011. He was apprised of the Inmate Grievance Program procedures at that time. (SUF, Doc. 10 at ¶ 5, citing Reich Aff. ¶ 6; Classification Summary, attached as Ex. L.)[2]

The MSP Grievance Process consists of four steps: an informal resolution form, an inmate grievance form, an appeal to the warden/administrator, and an appeal to the division of corrections. All steps of the MSP Grievance Process must

---

[2] The Classification Summary indicated that Mr. Banschbach signed a PREA Acknowledgment Form on March 23, 2011. (Doc. 11-12.) Defendant did not submit this form into evidence, but PREA acknowledgment forms filed in other cases state: "I have received a copy of DOC Policy 1.3.12, Staff Association and Conduct With Offenders, and DOC Policy 1.3.14, Prison Rape Elimination Act (PREA). I have read, or had these polices read to me, and understand the policies' terms and directives." *See Poulson v. Kirkegard*, Civil Action No. 14-cv-43-H-DLC-JTJ, Doc 72-1 at 9. In other cases, defendants from the Department of Corrections file an orientation acknowledgment form that inmates sign to indicate that they have been advised of the various policies at MSP, including the grievance policy, and understand that it is their responsibility to adhere to those policies. *Id.* at 11. The orientation acknowledgment form seems to be better evidence of an inmate being made aware of the prison's grievance policies than a classification summary that on its face only acknowledges training on PREA. In this case, however, Mr. Banschbach does not dispute that he was aware of the inmate grievance procedure.

4

be completed for remedies to be exhausted. (SUF, Doc. 10 at ¶ 6, citing MSP Policy 3.3.3, Doc. 11-1 at § III(E), III(F), III(I), III(K).) "If an inmate's action requested is granted, he will not be allowed to appeal the decision, and it is understood he has exhausted all administrative remedies." (SUF, Doc. 10 at ¶ 7 citing MSP Policy 3.3.3 § III(D)(6).)

Mr. Banschbach's filed an informal grievance on July 16, 2012, in which he described an incident on July 12, 2012, when he refused a pat-search by Officer Beckwith. He alleged Defendant Beckwith had sexually assaulted him during previous pat-down searches. The grievance form dated July 16, 2012, states:

> I am requesting a "staff conduct investigation" on 1st Shift Sgt. Johnson and C/O Beckwith because do to anxiety issue I refused a patsearch from C/O Beckwith (but not the other 2 C/Os and Sgt.) because C/O Beckwith is an open homosexual who likes to grope young men. I don't enjoy it at all and its against my religious and moral beliefs to violate someone's temple (body) like that. It is not funny to my [sic] to be touched pervetedly like that. So Sgt. Johnson told Beckwith to cuff me up. C/O Beckwith mutted [sic] something so I called him a punk. Sgt. Johnson swatted at my face, hit the bill of my hat off my head, called me a punk to, got so close he got spit in my face, picked my hat up and yanked it down so hard on my head my chin touched my chest.

(July 16, 2012 informal grievance, Doc. 19-1 at 11.)[3] This form references an

---

[3] Defendant's Statement of Undisputed Facts (Doc. 10) refers to Exhibits A-M. Although the exhibits are labeled Exhibits A-M in the docket text on CM/ECF, there is no label on the documents themselves. Additionally, since Defendant printed the exhibits attached to the Complaint from CM/ECF and refiled them with

5

inmate grievance continuation form, which states:

> On the morning of 7-12-12 while inmates Beckkles (cell#LA12), Seth (cell#LA1), and I (#LA5) were getting ready for pill pass and C/O Beckwith stopped us because he wanted to give me one of his "therrow [sic] pat searches." Already having anxiety as I was on my way to take my pain and anxiety medications I refused in front of the sgt. and 2 other C/Os to be pat searched by C/O Karl Beckwith but was fine with any of the other guys doing one. This is because C/O Beckwith wants to only grope us young mens groines [sic] and butts as he is an open homosexual and is very sick and perverted to us. He once took an inmate whom I Christian fellowship with into the close-1 laundry room, stripped him naked, made him bend over, and stared at him for 5 minutes or more with his flashlight. All of these things go against my right to religion. My body is my temple and I'm not just a piece of meat for your staff C/O Beckwith's sexual pleasures. Again I said to the Sgt. I don't mind being patted down by him or the other 2 C/O's standing there, just not C/O Beckwith. Besides staff in close-1 are aware of my mental problems from sexual assaults to me and to my family in the past. The Sgt. Johnson said to cuff me up so C/O Beckwith did. C/O Beckwith mutter something at me so I called him a "punk." Sgt. Johnson ran out of his office, swatted at my face (all while I was cuffed up) hitting the bill on my hat, my hat flew off, he got inches from my face, called me a "punk" back, got drops of spit on my face that flew from his mouth, picked up my hat, yanked it down so hard on my head my chin touched my chest, and so I called C/O Beckwith a "punk" again. Sgt. Johnson was red, fist clenched like he was going to hit me. I know he definitely wanted to by the way he lost control of his temper. By this time my stress/anxiety was out the roof. See to me just because in prison it's legal to let a homosexual gaurd [sic] feel, grope, and look pervertedly at your

---

the Statement of Undisputed Facts it is impossible to read the docket information generated electronically on the top of the documents in CM/ECF. As such, the Court's references to Mr. Banschbach's grievances will generally be to the documents attached to the Complaint and/or Mr. Banschbach's Response to the Motion for Summary Judgment.

6

> groine [sic] (private parts) doesn't make or mean it's right. It's against my religious beliefs to forcefully do stuff like that to someone who doesn't like it but (they do really enjoy it – C/O Beckwith). Its also not right to disrespect me by putting hands on me with cuffs on and calling me a punk so close you get bodily spit on my face (a drop hit my lower lip to). How is it I get the write up when I'm just target practice for these guys and they can do it back and then same with no one saying a word or doing anything about it and I'm not the only one this happens to.

(July 16, 2012 Grievance Continuation Form, Doc. 19-1 at 12.)

MSP staff responded: "Your informal resolution will not be processed as it pertains to a disciplinary write up which by policy is non-grievable. That being said, since you are requesting a staff conduct investigation a copy of this complaint will be forwarded to HS1 Unit Manager for her review." (Doc. 2-1 at 24-25.)

Mr. Banschbach submitted a formal grievance on August 15, 2012, "grieving the issue that my request for a staff investigation was denied for the way I was disrespectfully treated by Sgt. Johnson and 1st shift staff on (C/O Beckwith) 7-12-12." (Doc. 2-1 at 23.) MSP Staff responded: "Not processed–This was a disciplinary issue and you do not state any specific violations of DOC 1.3.12 to be processed." (Doc. 2-1 at 23.)

On August 26, 2012, Mr. Banschbach submitted an "OSR" to the Warden, stating that he was "having trouble grieving and getting a staff investigation done on Sgt. Johnson and C/O Beckwith" about the July 12, 2012 incident. In the

"OSR," Mr. Banschbach stated that "in the past [Beckwith] has touched my groin in a unprofessional manner." (Doc. 2-1 at 22.) The response by Associate Warden Beeson was: "will copy grievance [coordinator] and supervisor. You should be able to file grievance on alleged staff misconduct." (Doc. 2-1 at 22.)

Mr. Banschbach submitted a formal grievance (#3509) on August 27, 2012. He explained the July 12, 2012 incident and stated that he told Officer Beckwith: "No Karl, you can't pat down my nuts because I don't feel it's appropriate and it's perve." He requested a staff investigation on Sgt. Johnson and Officer Beckwith. (Doc. 2-1 at 21.) Warden Kirkegard responded, stating: "Allegations will be reviewed and investigated as necessary." (Doc. 2-1 at 21.)

On December 19, 2012, Mr. Banschbach filed a formal grievance (#3858), stating that on the morning of November 29, 2012, he asked staff to keep Officer Beckwith "off the block because he has sexually assaulted me during a pat-search and keeps harassing me." He stated that he was "sick and tired of M.S.P. Staff allowing C/O Beckwith to come near me not only after sexually assaulting me in a patsearch [sic] on the lowside [sic] last year in A unit but also throwing me in the hole several times this year for refusing to submit to more of his sexualy [sic] assaultive patsearches [sic]." (Doc. 2-1 at 16.) MSP staff responded: "This issue will be looked into." (Doc. 2-1 at 16.)

A staff investigation into the July 12, 2012, and November 29, 2012 incidents was performed in early 2013. (SUF, Doc. 10 at ¶ 22 citing Reich Aff. ¶ 17.) Mr. Banschbach later filed three informal resolution forms referencing the investigation, claiming that incidents from 2011 onward were discussed. (8/9/13 informal, Doc. 2-1 at 18; 11/28/13 informal, Doc. 2-1 at 19; and 11/28/13 informal, Doc. 2-1 at 20.)

On February 14, 2013, Mr. Banschbach submitted an informal resolution form describing an incident when Officer Beckwith tried to have him "cuff up" and he refused, stating that there was no way he was going to let Officer Beckwith touch him again. (Doc. 2-1 at 14.) MSP staff gave the following response: "On 3/14/13 I tried to investigate However [sic] you refused to speak with me." Mr. Banschbach then wrote on the form: "Did not state who he was or I would have spoke to him." (Doc. 2-1 at 14.)

## IV. DISCUSSION

The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement states:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

9

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). This means a prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Exhaustion is mandatory. *Booth v. Churner,* 532 U.S. 731, 741 (2001); *Jones v. Bock*, 549 U.S. 199, 211 (2007). Under the PLRA, prison regulations define the exhaustion requirements. *Jones*, 549 U.S. at 218.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. Once the defendant has carried that burden, the prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

"The ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.' " *Ross v. Blake*, __ U.S. __, 136 S.Ct. 1850, 1858 (June 6, 2016), *citing Booth*, 532 U.S., at 737–38. Therefore, inmates must exhaust those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.' " *Id.* at 1859, *quoting Booth*, 532 U.S. at 738.

There are three general situations that can render a prison or jail grievance process unavailable to an inmate. First, an administrative procedure is not available, and therefore need not be exhausted "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, __ U.S. at __, 136 S.Ct. at 1859.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. "When rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id*. (internal quotation marks and alteration omitted).

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process

11

through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id*. at 1860. For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747 F.3d at 1172-73; *see also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (holding that an inmate's fear of retaliation may suffice to render the grievance process unavailable, if the prisoner (1) "provide[s] a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance," and (2) "demonstrate[s] that his belief was objectively reasonable").

Mr. Banschbach filed informal grievances regarding Officer Beckwith on July 16, 2012, August 29, 2012, December 29, 2012, and February 14, 2013, which were granted. Montana State Prison Grievance Policy states: "If an inmate's action requested is granted, he will not be allowed to appeal the decision, and it is understood he has exhausted all administrative remedies." *Id.* at § III(D)(6).

There were numerous references to Officer Beckwith sexually assaulting Mr. Banschbach in those grievances. Defendant now argues that because those grievances did not allege a current sexual assault and the prior sexual assault did

12

not take place within five days of any of the grievances, Mr. Banschbach's grievances regarding sexual assault were untimely. (MSJ Brief, Doc. 9 at 10.) The Ninth Circuit, however, recently held "that a prisoner exhausts 'such administrative remedies as are available,' 42 U.S.C. § 1997e(a), under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016).

When prison officials ignore a procedural rule and decide the grievance, "the purposes of the PLRA exhaustion requirement have been fully served: prison officials have had a fair opportunity to correct any claimed deprivation and an administrative record supporting the prison's decision has been developed." *Id*.

This seems to be particularly applicable in this case. Mr. Banschbach sought an investigation into the actions of Officer Beckwith, and a PREA investigation was conducted. Defendant has not shared the results of that investigation, but nevertheless, it appears that an administrative record has been developed and it gave the prison an opportunity to "correct their own error." *Woodford*, 548 U.S. at 94.

Mr. Banschbach discussed or least implied that he had been sexually assaulted by Officer Beckwith and/or that Officer Beckwith conducted

inappropriate pat-down searches in his grievances filed on July 16, 2012 (Doc. 2-1 at 24-25; Doc. 19-1 at 11-12); August 27, 2012 (Doc. 2-1 at 21); August 20, 2013 (Doc. 2-1 at 12-13); and February 14, 2013 (Doc. 2-1 at 14). He raised the issue of sexual assault in his appeal to the Warden and to the Corrections Division in Grievance No. 3977, which the parties agree was fully exhausted.

Mr. Banschbach's grievances were granted in that staff and even Warden Kirkegard indicated that there would be an investigation. (Doc. 2-1 at 21.) In fact, there was an investigation in early 2013. Mr. Banschbach refers to it as a sexual assault investigation and a PREA investigation. Defendant argues the investigation was merely an investigation into the incidents of July 12 and November 19, but he presented no documentation regarding the specifics of the investigation.

Accordingly, the Court finds that Mr. Banschbach exhausted his administrative remedies and Defendant's Motion for Summary Judgment should be denied.

Based upon the foregoing, the Court issues the following:

## RECOMMENDATION

Defendant's Motion for Summary Judgment (Doc. 8) should be **DENIED**.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS &

**RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT**

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[4] 28 U.S.C. § 636. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a) should not be filed until entry of the District Court's final judgment.

DATED this 5th day of August, 2016.

/s/ John Johnston
John Johnston
United States Magistrate

---

[4] As this deadline allows a party to act after the Findings and Recommendations is "served," it falls under Fed.R.Civ.P. 6(d). Therefore, three (3) days are added after the period would otherwise expire.