IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION



| | |
|---|---|
| JACOB BANSCHBACH, <br><br> Plaintiff, <br><br> vs. <br><br> MSP CORRECTIONAL OFFICER CARL BECKWITH, <br><br> Defendant. | CV 15–106–H–DLC–JTJ <br><br> ORDER |

United States Magistrate Judge John T. Johnston entered his findings and recommendations in this case on August 5, 2016, recommending that Defendant MSP Correctional Officer Carl Beckwith's ("CO Beckwith") Motion for Summary Judgment be denied. Beckwith timely objected to the findings and recommendations, and so is entitled to a de novo review of the record. 28 U.S.C. § 636(b)(1). Plaintiff Jacob Banschbach ("Banschbach") subsequently moved for appointment of counsel and leave to file a witness statement. (Docs. 26; 27.)

The portions of the findings and recommendations not specifically objected to will be reviewed for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). "Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed."

*United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000). For the reasons explained below, the Court adopts Judge Johnston's findings and recommendations in full.

## BACKGROUND

On December 7, 2015, Banschbach, a current inmate at the Montana State Prison ("MSP"), filed a civil rights complaint claiming an Eighth Amendment cruel and unusual punishment claim and a Fourteenth Amendment equal protection claim related to alleged sexual misconduct committed by CO Beckwith. MSP has an "Inmate Grievance Program" that allows inmates to appeal staff conduct. Banschbach was informed of this program upon entry into the prison. The grievance process consists of four steps: an informal resolution form, an inmate grievance form, an appeal to the warden/administrator, and an appeal to the division of corrections. All steps must be completed for administrative remedies to be exhausted. Banschbach does not dispute that he was aware of the MSP Grievance Program.

On July 16, 2012, Banschbach filed an informal grievance about CO Beckwith. (Doc. 2-1 at 24–25.)[1] The grievance was denied and forwarded to the

---

[1] The findings and recommendations mistakenly referred to "Doc. 19-1 at 11" as the July 16, 2012, grievance form. This Court agrees with Defendant's objections that this is not the correct first page of Banschbach's grievance. Nonetheless, there is no dispute that this grievance

"HSI Unit Manager for her review." (Doc. 2-1 at 24.) Banschbach appealed to the next level. (Doc. 2-1 at 23.) This appeal was denied. *Id.* Banschbach then submitted an "Offender Request Form" to the Warden, stating that he was "having trouble grieving and getting a staff investigation done." (Doc. 2-1 at 22.) Associate Warden Beeson responded that this type of grievance was allowed. *Id.*

Banschbach then filed a formal grievance (#3509) on August 27, 2012, reiterating his complaints about CO Beckwith. (Doc. 2-1 at 21.) The Warden acknowledged his request and stated that his "[a]llegations will be reviewed and investigated as necessary." *Id.* On December 19, 2012, Banschbach filed another formal grievance (#3858). (Doc. 2-1 at 16.) MSP staff again responded that "[t]his issue will be looked into." *Id.* It appears from the record that the July 12, 2012, and November 29, 2012, conduct was under "staff investigation." (Doc. 10 at 7, ¶ 22; 11 at 6–7.) The record is inconclusive as to the results of the investigation.

Again, on February 14, 2013, Banschbach filed an informal grievance relating to an incident where CO Beckwith had him "cuff[ed] up." (Doc. 2-1 at 14–15.) Banschbach complained that CO Beckwith was not to be near him

---

was filed. In an effort to clarify, the Court will only refer to Banschbach's original § 1983 complaint and accompanying exhibits.

because Banschbach had an ongoing sexual assault investigation. *Id.* The grievance form indicates that an investigator attempted to perform a staff investigation on March 14, 2013, but that Banschbach would not speak with him. *Id.* Banschbach responded on the same form that he "[d]id not state who he was or I would have spoke to him." *Id.*

On February 11, 2013, and May 21, 2013, Banschbach filed formal grievances to the Warden alleging that the sexual misconduct by CO Beckwith had not been properly addressed (#3977 and #4110). (Doc. 2 at 3, 7.) The final formal grievance was responded to by MSP staff as follows: "My review finds that the matter had been given an appropriate level of attention by MSP medical/mental health staff. I find no ground to overturn prior decisions. Appeal denied." (Doc. 2 at 8.)

## LEGAL STANDARDS

The Ninth Circuit in *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (en banc), held that the proper procedural device for determining whether administrative remedies have been exhausted is a motion for summary judgment. A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the

documentary evidence produced by the parties permits only one conclusion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If the moving party makes a prima facie showing that summary judgment is appropriate, the burden shifts to the opposing party to show the existence of a genuine issue of material fact. *Id.* Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* In ruling on a motion for summary judgment, all inferences should be drawn in the light most favorable to the party opposing summary judgment. *Id.* at 159.

The Prison Litigation Reform Act ("PLRA") provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Thus, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Exhaustion is mandatory and each prison designates its own grievance process. *Jones v. Bock*, 549 U.S. 199, 218 (2007).

*Albino* established the burden-shifting approach of proving failure to

exhaust. 747 F.3d at 1172. "[T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* After the defendant carries that burden, the prisoner has the burden of production; therefore, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* A prisoner can prove he exhausted his administrative remedies by showing that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citations and internal quotations omitted).

The United States Supreme Court recently examined this exact issue. The Court found that there were three kinds of circumstances in which an administrative remedy, although officially on the books, was not capable of potential relief by an inmate:

> First, an administrative procedure is unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—i.e., some mechanism exists to provide relief, but no ordinary prisoner can navigate it. And finally, a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation.

*Ross v. Blake*, 136 S. Ct. 1850, 1853–1854 (2016).

## ANALYSIS

Viewing the evidence in the light most favorable to Banschbach and applying the *Albino* burden-shifting test, the Court agrees with Judge Johnston that Defendant's Motion for Summary Judgment is without merit. The evidence produced by CO Beckwith at most meets his burden of demonstrating that the MSP Grievance Program was an accessible administrative remedy at the initial step of the *Albino* burden-shifting inquiry. But, CO Beckwith has not carried his ultimate burden of proof in light of Banschbach's factual allegations. The evidence submitted by CO Beckwith generally outlines the procedure for filing a formal complaint, but it does not rebut Banschbach's evidence that administrative remedies were not available to him because his filings were rejected by prison officials. Banschbach filed numerous informal complaints and four formal complaints over a one-year span that all involved allegations of CO Beckwith's misconduct.[2] Consequently, under *Ross*, Banschbach met his burden by showing

---

[2] At first, Banschbach's July 2012 grievance was denied. He then appealed to the Warden, and the Warden indicated that this type of grievance was allowed. Subsequently, Banschbach filed another grievance in August 2012, which was responded to as being "reviewed and investigated as necessary." It is unclear from the record if the investigation was indeed completed or if the results of that investigation were disclosed to Banschbach. Nonetheless, as *Ross* illustrates, this back-and-forth grievance process makes it particularly "unavailable" for a prisoner to understand the Inmate Grievance Program at MSP.

that the MSP administrative remedies were unavailable to him.

## I. CO Beckwith's Specific Objections

### A. Objections to Factual Findings.

CO Beckwith's main objection to Judge Johnston's factual findings is that Banschbach did not timely file his grievances. (Doc. 25 at 10-12.) Under the MSP Inmate Grievance Program guidelines, grievances will be investigated only if the inmate presents an issue of concern within five working days of the action. (Doc. 11-1 at 2.) CO Beckwith contends that because the commencement of the alleged sexual misconduct occurred in 2011, and Banschbach did not file an informal grievance until July 2012, his grievance is untimely. Thus, without timely notification, MSP was not on notice of and could not adequately address the issue.

The Court agrees that the basis of Banschbach's grievances stem from an event that occurred in July 2011. However, the issue before the Court is whether Banschbach exhausted his administrative remedies, not whether Banschbach's grievances were timely filed. CO Beckwith urges this Court to not consider the totality of Banschbach's grievances because only one, on December, 19, 2012, makes a "distinctive reference" to an alleged sexual assault. (Doc. 25 at 14.) After reviewing all four grievances, this Court agrees with CO Beckwith that only

the December 19, 2016, grievance specifies the alleged assault by CO Beckwith in July 2011. (Doc. 2-1 at 16.) However, that issue is moot because MSP conducted an investigation into that exact grievance. *Id.*

CO Beckwith also objects to Judge Johnston's factual finding that MSP granted a Prison Rape Elimination Act ("PREA") investigation into the events of July 2011. (Doc. 25 at 16; Doc. 22 at 13.) CO Beckwith contends that the investigation into the alleged staff misconduct on July 12, 2012, and November 29, 2012, were not pursuant to the PREA, as there were no allegations of sexual assault in Banschbach's grievances. (Doc. 25 at 14.) This Court has already determined that while Banschbach did not specifically make reference to the July 2011 conduct in each of his grievances, all his forms still acknowledged CO Beckwith's alleged sexual behavior. It is unclear from the record what kind of investigation MSP actually conducted. Banschbach refers to it as a PREA investigation, and CO Beckwith refers to it as merely an investigation. However, this difference has no bearing on the issue of whether Banschbach exhausted his administrative remedies.

There is no dispute that MSP did conduct some type of investigation regarding Banschbach's July 16, 2012, and December 19, 2012, grievances. (Doc. 2-1 at 16.) Therefore, at this point, he had completed steps one and two of

grievance process (he submitted an informal resolution form, and an inmate grievance form).

b. **Objections to Legal Conclusions and Recommendations.**

CO Beckwith also objects to Judge Johnston's legal conclusions as they relate to the holding in *Reyes v. Smith*, 810 F.3d 654 (9th Cir. 2016). CO Beckwith spends the majority of his brief on this issue. He contends that Judge Johnston's reliance on *Reyes* is misplaced and does not support the proposition that prisoners exhaust administrative remedies under the PLRA, despite not complying with a procedural rule, if the prison officials decide the merits of a grievance at each step of the administrative process. (Doc. 25 at 16–24.) This Court disagrees with CO Beckwith. *Reyes* clearly states "that the PLRA exhaustion requirement is satisfied if prison officials decide a potentially procedurally flawed grievance on the merits." 810 F.3d at 657. While the facts in *Reyes* are not analogous with the facts in this case, *Reyes* cites to various cases in its sister circuits that have all adopted the same conclusion. *Id.* One of these cases cited by the Ninth Circuit addresses the very issue of satisfying the PLRA exhaustion requirement by an untimely filing of a grievance when it is accepted and decided on the merits. *Id.* (citing *Hill v. Curcione*, 657 F.3d 116, 125 (2d Cir. 2011)). Thus, Judge Johnston's finding is correct that when prison officials ignore a procedural

rule—including the five day time bar at issue here—and decide the grievance on the merits, the PLRA exhaustion requirement has been fully served.

MSP accepted Banschbach's July 16, 2012, and December 19, 2012, grievances on the merits, without addressing whatsoever the five-day time bar on filing grievable conduct under the MSP Inmate Grievance Program. Given that Banschbach's December 19, 2012, informal grievance specifically noted the July 2011 incident, and the grievance went under investigation by MSP, Banschbach satisfied the first two steps of the administrative remedies. His subsequent appeal to the warden/administrator and appeal to the Department of Corrections completed the final third and forth step in the MSP Inmate Grievance Program. (Doc. 2-1 at 2–4, 7–8.) Therefore, Banschbach definitively exhausted his administrative remedies on the issue of CO Beckwith's alleged sexual misconduct.

CO Beckwith's objections do not render Judge Johnston's findings and recommendations erroneous.

Accordingly, IT IS ORDERED that Judge Johnston's Findings and Recommendations (Doc. 22) are ADOPTED IN FULL. CO Beckwith's Motion for Summary Judgment (Doc. 8) is DENIED.

DATED this 5th day of October, 2016.

_____
Dana L. Christensen, Chief Judge
United States District Court